Norval Landrey, Appellant-Counterdefendant, v. Patricia Landrey, Appellee-Counterplaintiff.

Gen. No. 47,059.

First District, First Division.
April 1, 1957.
Released for publication April 24, 1957.

William J. Sheridan, Jr., of Chicago, for appellant and counter-defendant.

Carl B. Sussman and Leonard J. Braver, of Chicago, for appellee.

JUDGE BURKE delivered the opinion of the court.

Norval Landrey and Patricia Landrey were married at Chicago on July 3, 1953. They cohabited as husband and wife until about August 1, 1954. In January, 1955, subsequent to their separation, a child, christened Patrick John, was born. The child was taken by the parents to the home of Mrs. Landrey's mother. On December 12, 1955, the husband filed a complaint charging that about August 1, 1954, his wife wilfully deserted him without any reasonable cause, and that the desertion continued for more than one year. He prayed for a decree dissolving the bonds of matrimony and for the custody of Patrick. In an answer the defendant denied that she deserted him. She also filed a counterclaim charging that about August 1, 1954, her husband wilfully deserted her without any reasonable cause and that since then she "has been living separate and apart" from him without any fault on her part. She prayed for custody of their child and for maintenance, support and attorney's fees for herself and the child. Plaintiff denied the allegations of the counterclaim.

The case was heard on June 5, 1956. On June 15, 1956, pursuant to leave of court, plaintiff filed an amended complaint to conform with the proofs. The amended complaint charges that from about February, 1955, to "the fall of the year 1955" the defendant was guilty of adultery in that she lived and cohabited with Robert Mayer, assumed his name and lived openly and

notoriously with him as husband and wife; that during the course of the cohabitation with Mayer she became pregnant by him and thereafter gave birth to a female child who is not the child of the plaintiff. On June 15, 1956, the court entered a decree finding the defendant guilty of adultery in that from February 19, 1955, to the fall of the year 1955, she lived and cohabited with Robert Mayer, assumed his name, lived openly and notoriously with him as husband and wife, became pregnant by him and gave birth to a female child who is not the child of the plaintiff. The decree found that plaintiff wilfully deserted the defendant on or about August 1, 1954, without reasonable cause. The court found that by virtue of her conduct she is not entitled to alimony and that she is a fit and proper person to have the care, custody and education of their child. The decree dissolved the bonds of matrimony, awarded the care, custody, control and education of Patrick to the defendant, directed plaintiff to pay her $22.50 per week for the support and maintenance of the child, provided for the right of visitation by the father and ordered plaintiff to pay $375 to the attorney for the defendant for his fees. The decree denied alimony to the defendant. Plaintiff appealed.

Section 18 of the Divorce Act (Par. 19, Ch. 40, Ill. Rev. Stat. 1955) provides that when a divorce shall be decreed the court may make such order touching the care, custody and support of the children, or any of them, as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just. In Wade v. Wade, 345 Ill. App. 170, the court said (183):

"The chancellor is given broad discretion in awarding custody of children in divorce matters. He has an opportunity to see the witnesses, test their credibility or want of credibility, and courts of review should not

reverse his findings for these reasons unless they are clearly against the manifest weight of the evidence."

See also Cannon v. Cannon, 351 Ill. App. 135; Nye v. Nye, 411 Ill. 408; and Miezio v. Miezio, 6 Ill.2d 469.

The plaintiff had been regularly employed since the marriage and provided a home for his wife. He also purchased and paid for their furniture. After their marriage the parties moved to South Bend, Indiana, where they lived for one year. They then moved to Chicago, where they lived for a time with plaintiff's mother and with defendant's aunt. Then they moved to an apartment at 2908 South Parnell Avenue, Chicago. He testified that he always treated his wife well, that he took care of the bills, paid the rent and sometimes the defendant did the cooking and sometimes he cooked his own meals. He stated that she was in the habit of going out and would not "always be home" when he returned from work. He said that his wife was in the habit of going out to drink at taverns. He testified further that in his absence from their apartment on Parnell Avenue his wife moved out, taking all the furniture. He denied that he left her and stated that she "never came back to live" with him. Katherine Blair, the landlady, testified that on August 1, 1954, she saw the defendant moving the furniture out of her apartment to a truck in the alley. The witness did not know how much of the furniture defendant moved.

When called to testify under Section 60 of the Civil Practice Act, the defendant denied that she knew Robert Mayer or that she had a child by him. When she testified in her own behalf she said she knew Mayer and that she had a child by him who at the time of the trial was five months old. The child is taken care of by Mayer's mother. She stated that plaintiff left her twice during their marriage, the first time when they were living at her aunt's house after returning to Chicago from South Bend, and the second time in

August, 1954. She said that up to the time she separated from him she was a good wife to him, that he did not give her any money and that he paid all the bills. She stated that Patrick was living with her and her mother.

Plaintiff's mother testified that she brought nine children into the world, she being one of twenty-two herself, and that she has adequate and suitable accommodations for Patrick and would do all possible for him. Plaintiff's sister testified that she lives at home, that her mother is a good housekeeper and that she knows how to take care of children. The defendant testified that she has lived at her mother's home since her separation from the plaintiff and that Patrick has a fine home there. The maternal grandmother of Patrick loves him and takes good care of him. She has been divorced three times. The defendant's mother, who quit her job after Patrick was discharged from the hospital in order to remain at home and take care of him, testified to the care given the child, and stated that her daughter is a fit person to have the custody of the child. The defendant's father, who intends to remarry defendant's mother, testified similarly. A former sister-in-law of defendant's mother stated that the child was in good hands. The child is in good health. Plaintiff and plaintiff's mother testified that they found the baby well and that they have no complaint as to his care. At the time of the trial the defendant was living at her mother's house. The statement during oral argument that Mayer and the defendant were married on July 7, 1956 and that they are presently residing with defendant's mother pending the completion of an upstairs apartment in her mother's house, was not disputed. Mrs. Jack E. Rohats, a former sister-in-law of defendant's mother, testified that the defendant treated her husband "very well"; that plaintiff treated defendant "very coldly"; that she visits the

206

mother "very often and she is a fit person to take care of the child together with her daughter"; and that the defendant "has a physical as well as a mental illness." Witnesses for the defendant testified that after the birth of Patrick the plaintiff suggested that the child be put out for adoption.

■■ The defendant lived in an open state of adultery with Robert Mayer and gave birth to a child born out of wedlock. The second child was born ten months after the birth of Patrick. The defendant took the second child to the home of Robert Mayer. The mother of defendant believes that both children could grow up happily together. From the time of his birth to the present Patrick has been cared for by defendant's mother. The plaintiff has a good record as a soldier and as a citizen. We are convinced that the defendant deserted him without reasonable cause. We think that the finding that the defendant is a fit and proper person to have the care, custody and education of Patrick and that it is for the best interest and welfare of the child that he remain with her, is clearly against the manifest weight of the evidence. The evidence establishes that plaintiff is a fit and proper person to have the care, custody and education of Patrick.

■■ Plaintiff asserts that the allowance of attorney's fees to the defendant is an abuse of discretion. The allowance of attorney's fees in a divorce proceeding rests in the sound discretion of the chancellor, and unless such discretion is clearly abused its exercise will not be interfered with. Ylonen v. Ylonen, 2 Ill.2d 111, 121. On a consideration of the record we cannot say that the chancellor abused his discretion in awarding attorney's fees.

Because of these views the parts of the decree finding that plaintiff deserted the defendant without any reasonable cause and awarding the custody of the son

of the parties, Patrick John Landrey, to the defendant and requiring plaintiff to pay for the support and maintenance of Patrick, are reversed, and that part of the decree awarding attorney's fees is affirmed, and the cause is remanded with directions to modify the decree by awarding custody of Patrick John Landrey to the plaintiff with appropriate right of visitation to defendant.

Decree reversed in part and affirmed in part and cause remanded with directions.

NIEMEYER, P. J. and FRIEND, J., concur.