Louise Schurke Roback, Plaintiff-Appellee, v. Daniel Francis Roback, Defendant-Appellant.

Gen. Nos. 64–25, 64–64, 64–119.

Second District.

May 11, 1965.

Jerome Berkson, of Chicago, for appellant.

Peterson, Lowry, Rall, Barber & Ross, and John J. Enright, all of Chicago, Daniel V. Considine, of Lake Forest (Owen Rall and Peter M. Sfikas, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

Three separate appeals have been taken in the divorce action now pending before the trial court, by the defendant, Daniel Roback, which have been consoli-

dated by this court for determination. The first appeal, (Number 64–25) is from the order allowing temporary alimony, child support and attorneys' fees; the second, (Number 64–64) from the order allowing to the plaintiff, attorneys' fees and expenses to defend the first appeal; the last, (Number 64–119) from the order finding the defendant in contempt for wilful failure to comply with the prior orders of the court. The defendant has appealed from all orders of substance entered in the case and, even though the complaint was filed in December, 1963, the case has not yet been heard on its merits.

We will first consider the propriety of the award of temporary alimony, child support and attorneys' fees. The genesis of this litigious action was the complaint filed by Louise Roback for separate maintenance, or, in the alternative, for divorce based upon extreme and repeated cruelty. The last act of cruelty was alleged to have occurred December 13, 1963, and the prior acts in 1955, 1951 and 1949. The plaintiff had, in connection with at least two of the prior acts of cruelty, either commenced divorce proceedings or consulted a lawyer with respect thereto.

 The defendant first contends that the order allowing temporary support and attorneys' fees was improper because the parties were living together when the complaint was filed and, hence, it was not filed in good faith. There is no doubt that an award for temporary relief may not be made unless the complaint was filed in good faith. Anderson v. Steger, 173 Ill 112, 118, 50 NE 665 (1898); McAdams v. McAdams, 267 Ill App 124, 129 (1st Dist 1932); sections 13 and 15, Divorce Act (Ill Rev Stats 1963, c 40, pars 14 and 16). This does not mean, however, that the court may inquire into the merits of the action and the likelihood of whether the plaintiff will prevail in determining whether temporary relief may be granted, but only

225

that the court must satisfy itself that the complaint was filed in good faith and that there was probable cause or grounds for divorce. Cooper v. Cooper, 185 Ill 163, 171, 56 NE 1059 (1900); Jenkins v. Jenkins, 91 Ill 167, 168 (1878); People v. Mehan, 198 Ill App 300, 304, 305 (1st Dist. 1916).

In the case at bar, the fact that the parties were living under one roof did not indicate that the complaint was filed in bad faith. However, in actions for separate maintenance and in actions for divorce based upon desertion, where the element of living apart is essential to establish probable cause or grounds on which to base the action, the fact that the parties live together under one roof may, under certain circumstances, indicate an absence of good faith in the filing of such action. Here, the plaintiff filed complaint in the alternative, for separate maintenance or divorce, and upon the filing of a motion to dismiss, voluntarily dismissed the separate maintenance action. Had separate maintenance been the sole relief sought, defendant's argument might have merit, but it is no answer to the complaint for divorce based upon cruelty. Collinet v. Collinet, 31 Ill App2d 72, 78, 175 NE2d 659 (1st Dist 1961); Rasgaitis v. Rasgaitis, 347 Ill App 477, 482, 107 NE2d 273 (1st Dist 1952).

As a part of this argument, the defendant suggests that there was a lack of good faith because there was a condonation in that the parties resided in the same house. At the outset, we state that if the complaint survives a motion to dismiss, condonation is then an affirmative defense to be pleaded and proven by the defendant. McGaughy v. McGaughy, 410 Ill 596, 600, 102 NE2d 806 (1952); Collinet v. Collinet, supra.

The court must then determine the validity of such defense upon a hearing of the case on the merits, and condonation is not a defense to the allowance of tem-

porary relief where the plaintiff need only establish good faith by showing probable grounds or cause for divorce.

Further, the facts set forth in the record do not establish condonation as a matter of law. While plaintiff and defendant lived under the same roof after the last act of cruelty on December 13, 1963, and up to and beyond the date the complaint was filed, the plaintiff testified she had not occupied the same bedroom as defendant for many weeks prior to the date the complaint was filed. She testified she last had sexual relations with the defendant in August, 1963; and the defendant testified that the last act was in October, 1963. Elsewhere the defendant testified that since the inception of this action the plaintiff had been completely cold, had brushed him aside and had not even served him food.

■■ In Rasgaitis, supra, the court, in a thorough analysis of the meaning of condonation, pointed out that it is a question of intent and involves a full and free forgiveness of an offense upon the condition it will not be repeated; and that cohabitation does not necessarily imply the resumption of full marital or sexual relations. At page 481, the court stated:

"The Illinois Supreme Court has held that even an act of intercourse does not necessarily constitute condonation when it is not accompanied by an intent to resume the marital relation in full. Kennedy v. Kennedy, 87 Ill 250; and in Teal v. Teal, 324 Ill 207, the court held that condonation would not be found as a matter of law, even though the parties continued to live together right up to the filing of the bill; that cohabitation, the living together as husband and wife, although evidence of condonation, is not conclusive evidence thereof. Condonation, said the court, 'depends upon the intention of the injured person to for-

give the offender, to overlook the wrong and to continue or renew the conjugal relation.' Teal v. Teal, supra, p 220."

It is apparent from the record, that the purported cohabitation of plaintiff and defendant after the last alleged act of cruelty was an act of convenience or, more accurately stated, an act of necessity, for plaintiff was without funds and had no other place to live. Such cohabitation was not accompanied by actions or words evidencing forgiveness and was not a condonation of the cruelty charged. McGaughy v. McGaughy, supra. Nor will the fact that there might have been a condonation of the earlier acts of cruelty, justify a finding that plaintiff did not file her complaint in good faith. As stated above, condonation is the forgiveness of an offense on the condition it will not be repeated, and if repeated, the earlier offenses are then revived. Teal v. Teal, 324 Ill 207, 215, 216, 155 NE 28 (1927); Jones v. Jones, 13 Ill App 2d 198, 201, 141 NE2d 408 (1st Dist 1957). There was no condonation of the last act under the record here before us, and the earlier acts of cruelty were thus revived.

The defendant also contends that the alleged acts of cruelty do not constitute cruelty as required under the Divorce Act. This argument is apparently again directed to the contention that the complaint was not filed in good faith. It is true that, as abstracted, the complaint does not appear to allege either that the acts of cruelty caused pain or suffering to plaintiff, or that she was in fear for her safety, or that she gave no cause or provocation for the acts. However, from an examination of the record, we find that all of these allegations were contained in the complaint. Further, they were substantiated by her deposition wherein she testified that on one occasion the defendant threw her to the floor and choked her; that at another time he threw her down on a cement floor, slugged her

228

with his fists, and forcibly raised and pushed her head down on the cement floor, after which she went to, and was treated by, a doctor; and that on another occasion while using vile language, he twice shoved plaintiff against a wall with sufficient force to draw blood and leave marks on her which were still visible approximately one month later.

While there are some cases, as defendant points out, which have set forth that slight acts of violence, or those which are not grave or endanger life or limb, do not constitute cruelty under the Divorce Act, the Supreme Court more liberally defined the meaning of cruelty in Tuyls v. Tuyls, 21 Ill2d 192, 171 NE2d 779 (1961) where it stated at page 195: "To establish cruelty within the meaning of our Divorce Act . . . it is necessary to prove by a preponderance of the evidence that the guilty party has on at least two separate occasions committed acts of physical violence against his spouse resulting in pain and bodily harm . . . ." We do not believe that any of the acts of cruelty described in the complaint or enumerated by plaintiff in her deposition, reflect an absence of probable cause or grounds for divorce. Collinet v. Collinet, 31 Ill App2d 72, 77, 175 NE2d 659 (1st Dist 1961).

As to the amount of temporary support for the plaintiff and her two children, both parties are in accord as to the legal principles which are controlling, but the defendant contends that the order entered by the chancellor was an abuse of discretion and a deliberate pauperization of him. The amount to be awarded as temporary support pending the suit should be controlled by the necessities of the wife as shown by the circumstances, and by the financial ability of the husband to make the necessary contributions to the end that in the prosecution of her suit she shall be placed upon an equality with him. The amount of

the award is not limited solely by the husband's income, but the amount of property possessed by him may also be taken into consideration. Upon review, this court will refuse to set aside the order of the chancellor, except for an abuse of discretion. Harding v. Harding, 144 Ill 588, 599, 600, 32 NE 206 (1892); McAdams v. McAdams, 267 Ill App 124, 129 (1st Dist 1932); Low v. Low, 133 Ill App 613, 619 (1st Dist 1907).

In the instant case the plaintiff testified that she possessed $47. The defendant testified that he was the president and treasurer of Daniel's Surgical and Medical Supplies, Inc., and that he owned 90% of the stock of this company. The defendant reluctantly testified on deposition, that the building owned by the company was worth $40,000 and that it had issued 40,000 shares of stock having a value of $1 per share. Further information on the question of the worth of the company was precluded by the statement of defendant's attorney that questions on this subject would be answered only upon direction of the Court.

Defendant's income for the years 1960 through 1962, totalled approximately $16,400, and for 1963 was approximately $13,600. He also received certain fringe benefits in the form of an automobile, the payment of certain expenses by his company and certain bonuses from suppliers. In addition, the plaintiff testified as to her expenses and requirements and the defendant as to his financial obligations. The trial court, after complete hearing, awarded the plaintiff the sum of $75 per week as temporary alimony and support for herself and her two children, and further ordered the defendant to pay all of the expenses in connection with the operation and upkeep of the home. The award was ample, especially when consideration is given to the fact that the defendant was ordered to pay all expenses in connection with the operation and maintenance of the home. However, we

230

cannot say that the court abused its discretion or ignored the elements to be considered, as set forth above. Cooper v. Cooper, 185 Ill 163, 170, 171, 56 NE 1059 (1900).

The question of the reasonableness of the award of temporary attorneys' fees and of the fees to defend the appeal will be considered together. The court awarded $500 as temporary attorneys' fees and, in addition, $150 for stenographic charges and awarded $1,500 for attorneys' fees in defending the appeal from the first order, plus $250 for printing costs.

■■■■■ The amount of attorneys' fees awarded under the Divorce Act rests in the sound discretion of the trial court, and this discretion is not to be interfered with unless clearly abused. Ylonen v. Ylonen, 2 Ill2d 111, 121, 117 NE2d 98 (1954); Landrey v. Landrey, 13 Ill App2d 202, 207, 141 NE2d 405 (1st Dist 1957). The amount of fees depends upon the consideration of a number of factors including the nature of the controversy, the questions at issue, the significance or importance of the subject matter, the degree of responsibility involved, the standing and skill of the person employed, and the time and labor involved. Mueller v. Sloan, 33 Ill App2d 205, 207, 178 NE2d 135 (1st Dist 1961); McKay v. Wilhelm, 316 Ill App 397, 402, 403, 405, 45 NE2d 194 (1st Dist 1942).

■■■ John Enright testified that in his 30 years of practice he had handled approximately 300 cases involving matrimonial problems; that he was aware of the usual and customary charges in such cases; and that a reasonable fee would be $1,000. With the benefit of hindsight and with knowledge of the intensity of this litigation, it is apparent to us that the trial court was well within its discretion in awarding temporary fees in the amount of $500.

■■■ Owen Rall testified at some length as to the time and factors involved in the appeal from the order allowing temporary support, attorneys' fees and

231

stenographic expenses. In this testimony he set forth the basis for his opinions and that a minimum legal fee would be $1,500. We find that his estimate of the time required to handle this appeal was fair; that his analysis of the matters involved was reasonable and that the amount of fees awarded by the court for said appeal was within its sound discretion.

We note that Mr. Rall represented the plaintiff not only in connection with the appeal from the temporary support and fee order, but also in connection with the other two orders appealed from. Consequently, our comment relative to the propriety of the fee allowed on appeal is without prejudice to the right of the plaintiff to petition for further appeal fees, if she so desires, or without prejudice to the power of the trial court to hear such petition and enter such order thereon as may be proper and within said trial court's discretion.

The defendant further contends that the finding of contempt was erroneous in that there was no showing of his ability to pay the support and attorneys' fees as ordered; and that there was no showing that his failure to pay was wilful or contumacious. Plaintiff has urged this court to dismiss the appeal from the order finding the defendant in contempt for wilful failure to comply with court orders because of the failure of defendant to furnish a proper Abstract of Record. While the abstract is inadequate, we prefer to decide this appeal on its merits. A review of the record indicates that the trial court properly found the defendant guilty of wilful contempt of its orders.

The defendant sporadically paid to the plaintiff the sum of $55 per week, rather than $75 as provided in the Court Order. None of the attorneys' fees, costs or expenses have been paid as ordered. By an agreed order of June 26, 1964, the defendant was directed to pay the sum of $100 for travel expense for a vacation

for plaintiff and her two children. This was not paid. The defendant testified that he was drawing only $260 per week from the company at the time of the contempt hearing. However, it would seem that this sum would have been sufficient to enable him to pay $75 per week for the support of his wife and children, and also to permit him to make at the very least, some payments on the other sums ordered.

Defendant has cited certain cases hereinafter mentioned in support of his contention that he has not wilfully or contumaciously disregarded the orders of the trial court.

In the case of Wick v. Wick, 19 Ill2d 457, 167 NE2d 207 (1960), the wife, one month after the divorce, left the State of Illinois and took the children with her, contrary to the express provisions of the divorce decree. The husband thereafter began depositing the support money in a special account in the names of his two daughters and himself, in lieu of making support payments and deposited over $5,000 in this account. The court held that in view of the circumstances, he had not failed or refused to make the payments and his conduct was not of a wilful and contumacious character. Likewise in Anderson v. Anderson, 48 Ill App2d 140, 198 NE2d 342 (2d Dist 1964), this court held the defendant could not be found in contempt first, because the petition before the trial court had not asked that he be found in contempt, and secondly, because he had been led to believe that his child had been adopted by the plaintiff's new husband. The factual situations in these cases are different from those in the case at bar and said cases offer no succor to defendant.

██ The defendant has not shown that his failure to pay was due to his inability to do so. The failure to pay is prima facie evidence of contempt. Shaffner v. Shaffner, 212 Ill 492, 496, 72 NE 447 (1904). The

233

defendant's conduct throughout all stages of this litigious proceeding reflected a vindictive attitude toward the plaintiff and a wilful and contumacious disregard for the orders of the trial court. Such attitude and disregard was indicated in defendant's testimony prior to the entry of the first order appealed from, where he stated that the plaintiff came into the marriage without any money and he wanted her to go out of it in the same way. Such indication was also present in his remarks, which, according to the testimony of the plaintiff were that he would not support anyone who did not live under the same roof with him, and that he would go to jail before he would support her. The conduct of the defendant was always consistent with his testimony and the words attributed to him by plaintiff.

Accordingly, the orders of the trial court should be affirmed.

Order in cause No. 64–25 Affirmed.

Order in cause No. 64–64 Affirmed.

Order in cause No. 64–119 Affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.