NANCY GREENBAUM, Plaintiff-Appellant, *v.* JEROLD GREENBAUM, Defendant-Appellee.

(Nos. 56302, 56409 cons.;

First District (1st Division)—August 6, 1973.

Arvey, Hodes & Mantynband, of Chicago, (Howard Arvey and Gary D. Friedman, of counsel,) for appellant.

Block, Levy & Becker, of Chicago, for appellee.

Mr. JUSTICE EGAN delivered the opinion of the court:

Nancy Greenbaum brought an action for separate maintenance against Jerold Greenbaum, who answered and filed a two-count counterclaim. Count I of the counterclaim was for annulment and Count II for divorce. The court found for the husband on the wife's complaint for separate maintenance; for the husband on his counterclaim for divorce; for the wife on his counterclaim for annulment; ordered the husband to pay certain enumerated medical bills of the wife; and awarded the wife $3000 as alimony in gross. Later, the court conducted a hearing for the purpose of determining the amount of the wife's attorneys' fees and awarded $3550 payable in 18 equal monthly installments. This appeal is brought by the wife's attorneys, who contend that the trial judge abused his discretion in fixing their fees.

The defendant in his brief moved that the appeal be dismissed for two reasons: (1.) the attorneys have accepted ten monthly payments and are, therefore, estopped to seek reversal; (2.) the original notice of appeal was filed by the wife, who has no appealable interest in the award of attorneys' fees, and no notice has been filed by the attorneys themselves. After the filing of the defendant's brief, the attorneys for the plaintiff

filed a motion supported by affidavits for an order on the defendant to accept a check in the amount they contend was received in error by their firm.

It was stipulated that the time expended by the three lawyers of the plaintiff was as follows: Howard Arvey, 60 hours office time; Jack H. Oppenheim, 52 hours office time and 10 hours of court time; Gary D. Friedman, 56 hours office time and 56 hours court time. The attorneys stated that their firm billed at a rate of $100 per hour of court time and $60 per hour of office time. Our computation based on those figures results in a fee of $16,680. At the hearing, one of the attorneys for the plaintiff gave the judge a total of $6960 for office time and $6600 for court time, which the judge totaled at $13,500. The attorneys for the defendant suggested that the minimum fee standards of the Chicago Bar Association be followed. The plaintiff's attorneys contend that the minimum fee standards call for $35 per hour and, therefore, they would be entitled to at least $8190. The defendant, on the other hand, argues that he was referring to the fee provision for contested matrimonial actions calling for $1000 for one day's trial time and $300 for each additional day.

The defendant was a sales executive and vice president of Pakula & Company, who earned $34,900 in 1970. About two weeks before trial he bought over $2700 worth of stock. He had a bank account of $2700, and the largest balance he had in that account in the last 12-month period was over $12,000. The plaintiff was a seventh grade school teacher earning $8700 at the time of her marriage. She was not employed at the time of trial and was unable to pay her bills including those of her doctor.

From the time the original complaint was filed on May 6, 1970, until the trial on March 29, 1971, there were 21 separate court appearances, two petitions to hold the defendant in contempt were filed as well as the answer to the counterclaim, a motion to dismiss the annulment count and petitions to modify the temporary support order and to compel the defendant to respond to discovery proceedings. At least five hearings were held, as well as a number of pre-trial conferences. Depositions were taken of the plaintiff, the defendant twice, the defendant's employer, and the plaintiff's mother and doctor. The attorneys who represented the defendant at trial were the fourth counsel to appear in his behalf. In the defendant's brief the assertion is made that all discovery was instituted by his last attorneys and concluded in two days a week before trial. The record contradicts this. In oral argument and in his brief, the defendant suggests that the amount of hours claimed by the plaintiff's attorneys was exaggerated. No such suggestion was made in the trial court; in fact, the defendant stipulated to the amount of hours.

The plaintiff's attorneys contend that the court erred in not permitting

them to prove how much the defendant had paid his attorneys. The defendant has not answered this point in his brief. Although we have been unable to find any cases precisely on this point in Illinois, the plaintiff's attorneys have cited cases from other jurisdictions. In *Pope v. Pope*, 107 Cal.App.2d 537, 540, 237 P.2d 312, the court held "The allowance to the wife must give her the power to hire counsel of equal standing in order to equalize the contest, and to protect her rights." Among the factors to be considered in determining fees, the court said, are "the professional standing and reputation of the husband's attorneys and of the attorneys selected by the wife, * * *." In *Porter v. Porter* 67 Ariz. 273, 195 P.2d 132, the Supreme Court of Arizona remanded for a new hearing to permit proof of the amount paid to the husband's attorney on the ground that the wife's attorney was entitled to the same amount. See also *Guthrie v. Guthrie*, 73 Ariz. 423, 242 P.2d 549; *Hempel v. Hempel*, 225 Minn. 287, 30 N.W.2d 594.

■■ We are not persuaded of the wisdom or propriety of such an evidentiary rule. The ability of the husband to pay, which our courts recognize as a relevant factor, may be determined satisfactorily with the discovery available now, and the amount charged by the husband's attorney is not necessarily an indication of his ability to pay. Such a rule would be two edged. Would not a husband be permitted to prove that he had paid his lawyer a minimal fee and thus to avoid a larger payment to his wife's attorney? Moreover, the suggestion, implicit in such a rule, that a lawyer's standing and reputation and, most of all, his ability and zeal in protecting his client's rights depend on the size of his fees is untrue, as well as demeaning. We conclude, therefore, that the trial judge correctly excluded such evidence.

■■ The amount of attorney's fees rests in the sound discretion of the trial judge which will not be interfered with unless abused; and the amount of fees depends on the consideration of, in addition to the relative financial ability of the parties (*James v. James*, 24 Ill.App.2d 445, 164 N.E.2d 505), the nature of the controversy, the question at issue, the significance or importance of the subject matter, the degree of responsibility involved, the standing or skill of the person employed, and the time and labor involved. *Roback v. Roback*, 59 Ill.App.2d 222, 207 N.E.2d 130.

■■ The fee in this case represents compensation in the sum of $14 per hour. In our view this is inadequate and represents an abuse of discretion. The defendant was 42 years old with a substantial income; so far as the record is concerned he supports only himself. Contrary to the defendant's argument, the issues were not simple but involve legal questions of fraud and incapacity and factual questions depending on medical

and psychiatric testimony. Nor by any stretch of the evidence could the proof be equated with "uncontested or default cases," as the defendant suggests, but, rather, showed deep personal animosity reflected by differences irreconcilable in spite of numerous attempts by court and counsel to resolve them. The trial judge paid personal tribute to the ability of the plaintiff's attorneys, particularly Mr. Friedman, who tried the case, and noted that he came from a "very prestigious firm." He also stated that "all things being equal [he] would be susceptible to award substantial attorney's fees" but declined to do so, apparently because he had awarded her alimony. In our opinion alimony was properly awarded, and it was not a proper consideration for reducing the attorneys' fees in this case. We, therefore, fix the attorneys' fees at $35 per hour for a total of $8190. See *James v. James*, 24 Ill.App.2d 445, 164 N.E.2d 505, (Abstract opinion) wherein the Appellate Court ordered attorney's fees be increased from $3000 to $6000.

■■ The defendant argues that the acceptance of part of the fee estops the attorneys from contesting the award, citing *Boylan v. Boylan*, 349 Ill. 471, 182 N.E. 614. In that case, the husband was granted a divorce, and the wife was awarded alimony and $500 for her attorney's fees. She accepted the $500 "with knowledge of the purpose with which" it was paid. The Supreme Court held that her acceptance of that part of the decree beneficial to her barred her right to seek to reverse those parts which were unfavorable to her. The case is distinguishable for two reasons: First, the affidavits filed here by the attorneys show that they were unaware of the fact that payments were being made; the affidavit of the head of the firm's bookkeeping department shows that the account receivable ledger showed a statement for services rendered to Jerold Greenbaum in the amount of $1130 in effecting a reconciliation between the plaintiff and the defendant before the filing of the complaint; that the firm had advanced certain costs and expenses of the litigation to the plaintiff in the sum of $1567.40; that when she received the checks by mail she deposited them in the firm's account crediting the amounts against the advanced costs and when that was paid she began applying the checks against the amount of $1130 previously due from the defendant; that she never informed the attorneys in the firm of payment of the checks, which were received by mail in an envelope addressed only to the firm without being directed to the attention of any particular attorney; that she was unaware of the order in the divorce decree or that an appeal had been taken from that order until after the filing of the defendant's brief; and that she did not have authority to accept the payments in the manner they were tendered. Before the rule of *Boylan* may be invoked, there must be a showing of an "eyes open" acceptance of the benefit of

the decree. To the contrary, this record clearly shows that the money was not accepted "with knowledge of the purpose" for which it was paid.

Second, in *Boylan,* the wife accepted the full amount awarded for attorney's fees, which was paid directly to her. (The case was decided before the 1945 amendment permitting payment directly to the attorney.) In this case, only part of the total award was received by the attorneys. Neither *Boylan* nor *Scott v. Scott,* 304 Ill. 267, 136 N.E. 659, cited by the defendant, is authority for the proposition that acceptance of part of the money awarded for a specific purpose bars an appeal. We conclude, therefore, that the attorneys are not estopped to prosecute this appeal.

■■ The defendant also contends that this court lacks jurisdiction since the attorneys never filed a notice of appeal. This contention also is without merit. The notice of appeal was filed May 6, 1971, by the plaintiff, in which she asked for a reversal of the decree granting the defendant a divorce; to direct the court to enter a decree in favor of the plaintiff on her complaint; reverse that portion of the decree awarding the plaintiff the sum of $3000 as alimony in gross; reverse that portion of the decree awarding the plaintiff $3500 for attorneys' fees; and to direct the circuit court to require the defendant to pay certain bills. Subsequently, pursuant to stipulation filed in this court between the plaintiff and the defendant, the appeal of Nancy Greenbaum was dismissed. That stipulation recited in part:

> "Whereas, the Plaintiff, Nancy Greenbaum and the Defendant, Jerold Greenbaum expressly understand that the acceptance by Nancy Greenbaum of said cash settlement is not intended to have any effect whatsoever upon the appeal by Arvey, Hodes & Mantynband with respect to the alleged inadequacy of the Trial Court's award of attorney's fees, and,
>
> Whereas, it is expressly understood and acknowledged by the parties that the appeal previously filed herein shall continue only as to the question of the adequacy of the Trial Court's award for attorney's fees and costs, all other matters in controversy and dispute having been settled or compromised."

In support of his contention, the defendant cites *Richheimer v. Richheimer,* 59 Ill.App.2d 354, 208 N.E.2d 346, in which case the party cross-appealing did not allege the inadequacy of his attorney's fees. That case is authority for the proposition that an attorney has a sufficient interest upon which to prosecute an appeal in his own name alleging inadequacy of fees. It does not hold that a party may not include in the notice of appeal the inadequacy of attorney's fees. If the position of the defendant is correct, in every case such as this two notices of appeal should be filed. Neither logic nor judicial economy calls for such a result. For these

reasons the motion of the defendant to dismiss is denied. The judgment of the circuit court is reversed and remanded with instructions to enter an award for planitiff's attorneys' fees in the sum of $8190.

Judgment reversed and remanded with directions.

GOLDBERG and HALLETT, JJ., concur.