MARY ELAINE WELSH, Plaintiff-Appellee, *v.* THOMAS E. WELSH, JR., Defendant-Appellant.

First District (1st Division)   No. 62076

Opinion filed April 19, 1976.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Miles N. Beermann, of counsel), for appellant.

Rinella and Rinella, of Chicago (Owen L. Doss, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

The issue presented by this divorce litigation is the amount of fees awarded by the court to counsel for plaintiff. Mary Elaine Welsh (plaintiff) obtained a judgment for divorce against Thomas E. Welsh, Jr. (defendant). Prior to that time the parties, represented by their respective counsel, had reached a property settlement agreement including provision for custody and support of their four children.

Defendant has appealed from a separate order, entered after the judgment for divorce, which awarded fees to counsel for plaintiff. In the written property settlement agreement, incorporated into and approved by the judgment for divorce, the husband agreed "that he will pay to the attorneys for the wife, such sum or sums of money as may be agreed upon

by and between the parties hereto, or as shall be determined by the chancellor [*sic*] hearing the cause aforementioned."

No agreement could be reached by the parties concerning the amount of fees. The matter was accordingly submitted to the trial court. After hearing evidence and arguments of counsel, the court entered judgment finding that counsel for the wife had made a reasonable request for fees of $15,000 but, because of the present economic circumstances of the defendant, the amount should be reduced to $10,000 plus costs with credit to defendant for $1500 previously paid. The order provided for payment at the time of entry of judgment of $3500 plus costs of $441 with the balance of $5000 to be paid in five equal monthly installments commencing 30 days after judgment.

The first witness called by plaintiff was a qualified and experienced attorney who principally handles matrimonial cases and who has been a teacher in an accredited law school for many years. At one time he was associated with counsel of record for plaintiff. The expert testified that, in his opinion, the fair and reasonable fee to be allowed counsel for plaintiff would be from $13,500 to $14,500 exclusive of costs. The opinion of the expert was given in response to a lengthy hypothetical question asked by counsel for plaintiff. The question included factual assumptions that plaintiff sought her counsel's advice when she was in a highly emotional state and that the attorney gave her "approximately 18 months of constant counselling." The attorney retained the services of an accountant to examine the books and records of defendant for which the accountant has submitted a bill for $400.

The witness further assumed that both counsel held a pretrial conference with the court for examination and discussion of financial statements. Counsel for plaintiff then prepared a property settlement agreement. On four occasions modified paragraphs for this agreement were sent back and forth between opposing counsel. Eventually an agreement was reached which provided for transfer of the marital home to plaintiff, subject to a mortgage. The home is also pledged to secure a business debt of $150,000 incurred by defendant. The agreement provided for payment of these debts by defendant with the further agreement that they were not to be dischargeable in bankruptcy. Protecting plaintiff from liability for these debts in event that defendant became bankrupt presented a difficult legal problem for which counsel for the wife "made a very astute provision."

It was further assumed that the judgment provided for payment of a lump sum settlement to plaintiff of $150,000. In addition, the agreement provided for payment by defendant of all costs and expenses in connection with education of the children at the college or university level and for him to defray all medical costs required for the minor children

and procure insurance to cover these obligations. The expert also assumed from the question that the time sheets kept by the attorney for plaintiff were not complete although the attorney did have a list of letters and documents prepared. As regards time expended by counsel for plaintiff, the expert testified on cross-examination that he had guessed or estimated "in the neighborhood of 150 hours" had to be spent by counsel but he had no idea whether the actual time expended was 50 hours or as much as 300 hours. The fact that the case was heard without contest on the merits of the divorce would not change the opinion of the expert.

In addition, if the expert had been advised that the defendant's business was operating at a loss so that he lacked ability to pay fees, the expert would still adhere to his opinion that the case was worth the amount which he had stated. If the expert were to assume that only two hours were spent by counsel in actual negotiations, his estimate of fees would then be reduced to $10,000. If he were to assume that the property settlement instead of aggregating $300,000, as suggested on direct examination, aggregated $150,000, including child support, he would reduce his fee estimate by an additional $500 or $1000.

Plaintiff testified that she had a small checking account of approximately $300; she owned a small number of shares of stock in four companies, all in joint tenancy with the defendant; she had no assets other than those which she was to receive pursuant to the judgment for divorce and she receives $1000 per month for support of herself and the four children of the parties.

Plaintiff's attorney, who had handled the case personally, testified in narrative form. He has had a long and active practice in matrimonial matters and is associated with a widely known and highly respected firm of attorneys specializing in the same area. This witness testified generally as to the services rendered commencing with his initial contact with plaintiff. No records or notations regarding time were produced and the attorney stated that he did not base his request for fees solely on time. He stated that he had spent a great deal of time in working out the alimony and support arrangements. A particularly difficult problem, in his opinion, was his concern that if the defendant were to become bankrupt, his personal liability upon the debts for which the marital home had been pledged would be terminated and the loss would then fall entirely upon plaintiff. Much legal thought and research on his part resulted in a provision in the executed property settlement agreement to the effect that the obligations of the husband and the rights of the wife were not dischargeable in bankruptcy. The attorney requested a fee allowance of $15,000 (subject to the credit for $1500 previously paid) and expended costs, including fees paid to the accountant in the total amount of $441.

On cross-examination counsel testified that he could not state the total

number of hours spent on the case. The emotional problems of plaintiff were a factor which he considered together with aggravation which he necessarily encountered through the course of the proceedings. He further pointed out that he had filed interrogatories for discovery which defendant had answered. Although no depositions were taken, defendant made all financial records available to plaintiff's accountant. The witness could not detail the time spent in connection with negotiation of the settlement except to state that the assumption by defendant's counsel in his cross-examination of plaintiff's expert that this process took approximately two hours was absolutely incorrect. Counsel estimated that the pretrial conference between the attorneys and the trial court took from half an hour to 45 minutes. He also pointed out that the property settlement agreement was sent back and forth between counsel some three or four times until final agreement was reached.

The witness estimated that the total property settlement involved approximately $300,000. The total lump sum settlement, including payments for alimony and child support, comprised $150,000 payable in installments over a five-year period. He testified that after negotiations the parties agreed that plaintiff actually owned a half interest in the marital home and the agreement provided that the portion owned by her husband be transferred to her. The property is encumbered by a $40,000 mortgage and has also been pledged for indebtedness incurred by the husband in the amount of $150,000 which he covenanted to pay. The witness testified that during negotiations he had placed a value upon the marital home of $60,000 and that counsel for defendant had contended that the value was closer to $100,000.

Defendant testified that he is presently the sole owner of two automobile sales agencies. During the past 12 months one of these enterprises suffered a loss in the neighborhood of $60,000. The second agency, acquired by him in May of 1974, has about broken even to the date of his testimony, with perhaps a slight profit. He draws a total net salary of $345 per week which he computed as $1495 per month. He also receives net payments of $350 per month for some buildings in La Grange which he leases out. These properties are also pledged for payment of defendant's business indebtedness. Consequently his total income is $1845 per month subject to monthly installments of $1000 paid to plaintiff. He also pays college tuition for the two older children, approximately $7000 per year, and high school tuition of $600 per year for the two younger children.

The record before us regarding determination of the amount of fees hardly constitutes a model for a legal textbook. The matter was heard without the filing of a petition setting out the services rendered, and without submission of any type of record to reflect the amount of time by

counsel. The expert witness called by plaintiff gave his opinion in response to a hypothetical question stated by counsel for plaintiff prior to the time that there was evidence to prove any of the factual elements in the question. This practice has been described as being within the sound discretion of the trial court but it "is not desirable and is strongly to be discouraged." (*Gibson v. Healy Bros. & Co.* (1969), 109 Ill. App. 2d 342, 353, 248 N.E.2d 771.) The experienced and able trial court pointed these matters out to counsel but they apparently agreed to overlook them.

■■ The power of the court to provide for payment to the attorneys for their legal services rendered in marital cases is so well established that the pertinent statutory authority for the practice need hardly be cited. (See Ill. Rev. Stat. 1973, ch. 40, par. 16.) Many cases have reiterated the principle that the amount of attorneys' fees rests in the sound discretion of the trial judge which will not be interfered with unless abused. *Greenbaum v. Greenbaum* (1973), 14 Ill. App. 3d 217, 221, 302 N.E.2d 165, *leave to appeal denied*, 54 Ill. 2d 597.

It has also been stated many times that the "allowance of attorney's fees is not automatic but depends upon a showing that one of the parties is financially unable to pay their own fees and that the opposing party does have such ability." (*McLeod v. McLeod* (1971), 133 Ill. App. 2d 111, 113, 272 N.E.2d 834.) This principle has been well stated in *Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 1051, 318 N.E.2d 282, as resulting from a consideration of which of the parties has "greater financial ability." (See also *Heinz v. Heinz* (1975), 33 Ill. App. 3d 542, 545, 338 N.E.2d 157.) From the record here, it is our opinion that the trial court did not abuse his discretion in requiring defendant to make payment of attorney's fees. We note, in addition, that in the property settlement agreement defendant expressly assumed liability to pay attorney's fees in such amount as might be agreed upon between the parties or as should be determined by the court. Accordingly, defendant's contention that plaintiff's counsel should be awarded nothing beyond the $1500 previously credited upon the fees is without merit. As initially stated in this opinion, the only issue is the amount of the fees.

The matter of fixing attorney's fees is one of the few areas in which a trial judge may "rely on the pleadings, affidavits on file and on his own experience * * *." (*Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 1051, 318 N.E.2d 282.) "It has been the rule in this state for many years that courts will not be bound by the opinion of attorneys as to what constitutes reasonable attorneys' fees. The courts may use the knowledge they have acquired in the discharge of professional duties as to the value of legal services rendered." (*Richheimer v. Richheimer* (1965), 59 Ill. App. 2d 354, 365, 208 N.E.2d 346.) In reviewing the record before us, we

are obliged to consider the discretionary function of the trial court, the testimony before us and the entire record of the proceedings, all in the light of our own knowledge and experience in this type of matter.

There are, however, certain guidelines established by reviewing courts which should be resorted to in connection which the allowance of fees in addition to the financial ability of the parties. In *Greenbaum*, this court cited *Roback v. Roback* (1965), 59 Ill. App. 2d 222, 207 N.E.2d 130, in stating those elements as, "the nature of the controversy, the question at issue, the significance or importance of the subject matter, the degree of responsibility involved, the standing or skill of the person employed, and the time and labor involved." 14 Ill. App. 3d 217, 221.

It is our considered opinion that the attorney's fees allowed by the court in this case are higher than they should reasonably have been. The subject matter of the case did involve matters of significance or importance as does virtually every case, particularly from the point of view of the litigants. In addition, in this case, as in every piece of litigation, the lawyers bear a high degree of responsibility. In our opinion, the standing in the legal profession and the skill of counsel before us in this case are of the highest order. However, the time and labor necessarily involved in representing the plaintiff in the case before us does not reasonably justify the fees granted. We can readily see from the record before us that counsel for plaintiff prepared the usual form of complaint for divorce comprising six pages. Interrogatories were served upon defendant; this document presents 65 questions presented in 10 pages. It appears to be based upon a standardized form such as we have often seen used by specialized attorneys in personal injury or in criminal matters. The property settlement agreement comprises 12 pages. We learn from the record that, as we would anticipate, this agreement was amended at various times during the process of finalizing it. The judgment for divorce itself consists of four additional pages. The single pretrial conference between the attorneys and the trial court occupied from 30 to 45 minutes. The merits of the divorce were presented without contest or argument in a transcript comprising 17 pages.

If these facts, apparent from the proceedings themselves, were the only matters before us, the fee allowed by the court would appear excessive. We also have before us the testimony of a highly qualified expert and the narrative testimony of counsel for plaintiff. In our opinion, an important element is lacking in both of these sources. From neither one can we obtain more definite information as to the time spent which is material in determining the reasonable amount of the fee. Time spent upon the case is necessarily an important element. We are not dealing here with a situation in which the amount of a fund can be used as a helpful guideline in fixing the amount of fees. (Compare *Leader v. Cullerton* (1974), 25 Ill.

App. 3d 216, 323 N.E.2d 11, as modified by *Leader v. Cullerton* (1975), 62 Ill. 2d 483, 343 N.E.2d 897.) It may not be said that the time expended by the attorney is the only essential element in this instance but it must be conceded that the time expended is at least as important as any other factor in determining the amount of fees.

In *Greenbaum v. Greenbaum* (1973), 14 Ill. App. 3d 217, 302 N.E.2d 165, this court increased the amount of attorney's fees because the award did not, in our opinion, represent adequate compensation for the time expended. In the case before us no time record or specific estimate was ever made of the time expended beyond an estimate or guess which used the figure of 150 hours. Our own experience tells us that this estimate is not supported by the record before us.

In the judgment order for allowance of fees, the trial court found that the request of $15,000 was reasonable except for the present economic circumstances of the defendant. In our opinion, even greater consideration should be given to defendant's financial ability to pay fees. The only evidence in the record shows that he is engaged in two businesses, one operating at a loss and one operating with a slight profit. Out of a net income of $1845 per month, he has a fixed obligation to pay plaintiff $1000 each month and he is also subject to payment of additional sums for college and high school tuition. Counsel for plaintiff takes the position that defendant is a man of considerable wealth but there is no substantiation of this contention in the record.

■■ It is our considered opinion that the record here does not justify the fees allowed not only because of the economic circumstances of the defendant but also because the time spent by counsel for plaintiff does not justify an award of this size. In our opinion, the total amount of fees to be allowed should be $5500. The judgment order appealed from, entered April 22, 1975, is accordingly modified by striking out the total allowance of $8500 and substituting the sum of $5500 which is to be paid $2000 plus costs of $441 within 30 days from issuance of the mandate of this court and balance of $3500 in seven equal monthly installments commencing 60 days after the issuance of said mandate. As modified, the judgment order is affirmed.

Judgment modified and affirmed as modified.

BURKE and SIMON, JJ., concur.