*In re* CUSTODY OF NICOLE BURNETT.—(GABRIELE E. BURNETT, Petitioner-Appellant, *v.* JAMES W. BURNETT, Respondent-Appellee.)

Second District   No. 78-537

Opinion filed August 21, 1979.

White & Roux, of Lake Bluff, and Thomas M. Gurewitz, of Waukegan, for appellant.

Stephen G. Applehans and William G. Rosing, both of Rosing, Carlson & Magee, Ltd., of Waukegan, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Petitioner, Gabriele Burnett, appeals from an order denying her petition to modify provisions of a divorce decree which awarded custody of the parties' daughter to respondent, James Burnett.

James and Gabriele Burnett were married in April of 1968, and Nicole, their only child and the subject of this litigation, was born later that year. On January 25, 1974, the marriage was dissolved, and custody of Nicole was awarded by agreement to James. He remarried in the spring of 1976 and animosity developed between Nicole and her stepmother, Linda, and as a result, James relinquished physical custody to Gabriele on June 4, 1976, with whom she resided thereafter until April 1978. James testified that he intended this arrangement to be only temporary, and that he had made his intent clear to Gabriele. Gabriele, on the other hand, testified that the change in custody was mutually understood to be permanent.

During the 22 months in which she resided with her mother, Nicole completed the third and fourth grades at a local elementary school and acquired a number of neighborhood friends. Gabriele participated in parent-teacher conferences at the school and took Nicole on a number of vacations including trips to West Germany, New Orleans and Pennsylvania. The two enjoyed various recreational activities together including roller skating and attending movies. James divorced Linda four months after relinquishing custody of Nicole but did not seek to regain custody at that time. In early 1977 he began living with a woman named Angela, a relationship which continued until March 1978. It was not until January 1978 that he visited Nicole on a regular basis; prior to that time he had seen her on two or three occasions in 1977.

On April 21, 1978, Gabriele filed the petition seeking to modify the divorce decree and gain permanent custody of Nicole. Shortly after receiving notice of the petition and without informing Gabriele, James re-established custody by picking up Nicole one day at school and she has since resided with her father on his farm. After hearings, the trial court denied the petition and this appeal followed. The primary issue presented for our consideration is whether the trial court erred in finding that respondent did not "consent" to his daughter's integration into petitioner's family within the meaning of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 610(b)(2)).

Section 610 provides in relevant part as follows:

"(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:

(1) the custodian agrees to the modification;

(2) the child has been integrated into the family of the petitioner with consent of the custodian; or

(3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him."

The petition in this case alleged a change in circumstances had occurred, that modification was in the best interests of the child and that the child had become integrated into the family of the mother with the consent of the father. Although it made no findings as to changed circumstances of the child's best interests, the trial court found that Nicole had become integrated into her mother's family, but concluded it must deny the petition on the ground that the consent requirement of section 610(b)(2) had not been satisfied, observing there had been some evidence to support the father's claim that his relinquishment of custody was intended to be temporary, but also other evidence that it was to be permanent. The court concluded, however, that even if the father had consented to a permanent change in custody, he revoked that consent two years later by taking Nicole from her mother.

Petitioner brings this appeal contending that the trial court's decision finding lack of consent is against the manifest weight of the evidence, and that consent under subsection (b)(2) cannot be revoked. We agree.

The Commissioner's Note to the uniform act, from which the new Illinois Act was drawn, suggests that finality of child custody judgments is an important consideration as any change in a child's environment may have adverse effects upon him. (Uniform Marriage and Divorce Act, 9A Uniform Laws Annotated 91, 212, Commissioner's Note (1979) (hereinafter ULA).) Subsection (b)(2) specifically contemplates modification where a child, formerly in the custody of one parent, has in fact been integrated into the family of the petitioning parent as the effect on the child may then be less disruptive.

■■ In our view, the consent requirement in section 610(b)(2) is intended to ensure that the custodian acquiesced in the transfer of physical custody (*e.g.*, to discourage noncustodial kidnapping) and the integration into the family of the petitioner, and should be viewed in that narrow context. (9A ULA 212.) The consent requirement is satisfied where as in this case the custodian had placed the child with the noncustodial parent and willingly permitted the child to become integrated in the new family.

■■ The record does not support the father's contention that he intended the new custodial arrangement to be temporary and did not intend the child to become part of the mother's family. He testified that at the time he relinquished custody he told the mother he would "remain in the

background" and "not interfere" with the mother's custody. Additionally, while the father claims he relinquished custody solely because of the conflict between Nicole and his second wife, he made no attempt to re-establish custody after the second divorce, and instead initiated a new relationship with a third woman, visiting Nicole on only two or three occasions during that period. Respondent's testimony that he did not want his daughter to become integrated into petitioner's family is inconsistent with his conduct in leaving Nicole with her mother for almost two years. We find that the consent requirement of subsection (b)(2) was fully satisfied in this case.

■■ The trial court also suggested that even if the father had originally consented to the child's integration into the mother's family, he later revoked that consent by taking physical custody in April of 1978. It would be inconsistent with the policies of stability and continuity underlying section 610, however, to allow revocation of such consent once the child has become settled into her new family with the acquiescence of the custodial parent.

As pointed out previously, the trial court made no findings on the questions of changed circumstances and whether the interests of the child would be best served by a change of custody. There is some indication in the record that the court might have arrived at a different conclusion had it not felt constrained by section 610(b) to decide the consent issue as it did. Accordingly, the order of the trial court denying the petition will be reversed and the cause remanded for further proceedings. In view of the policy of section 610 favoring stability in the child's environment, the trial judge should also take into consideration Nicole's residence with her father since April of 1978, in determining whether a modification of custody now would best serve Nicole's interests.

Reversed and remanded.

GUILD, P. J., and RECHENMACHER, J., concur.