*In re* CUSTODY OF HOLLY IVERSON.—(JAMES IVERSON, Petitioner-Appellant, *v.* KATHERINE IVERSON, Respondent-Appellee.)

First District (2nd Division)    No. 79-1328

Opinion filed April 15, 1980.

494

Mel Sloan, of Chicago, for appellant.

Berle L. Schwartz, of Highland Park, for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Petitioner James Iverson brought this cause to acquire exclusive custody of his minor daughter, Holly, from his former wife, respondent Katherine (Iverson) Hall. The trial court, after protracted hearings, ordered James to transfer physical custody of Holly to Katherine. James appeals and presents the following issues for review: (1) whether the trial court erred when it applied section 610 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 610); (2) whether the trial court erred when it required a showing of a material change in circumstances; and (3) whether the ruling of the trial court was contrary to the manifest weight of the evidence.

The parties to this cause were married in Ogden, Utah, on September 14, 1968. As a result of that marriage they had two children: Tamera, born on September 26, 1969, and Holly, born on May 11, 1975.

In April of 1978, apparently by agreement, Katherine left the marital home. The two children stayed with their father and continued their school attendance. On April 17, 1978, the Circuit Court of Lake County, Illinois, in default of James' appearance, entered a judgment for dissolution of the Iverson marriage. That judgment incorporated, *inter alia*, the following oral agreement between the parties:

> "That [Katherine] and [James] shall have joint care, custody, control and education of the minor children, namely Holly * * * and Tamera * * * . That Holly shall reside with [Katherine] and Tamera shall reside with [James]. That the [parties] shall each have reasonable visitation with reference to the other child. That neither [party] shall be responsible to pay child support to the other."

The record indicates the judgment court conducted no inquiry regarding the children's best interest.

For the next 60 days, until June 18, 1978, the two girls continued to live with their father. The routine of each school day required James to take Holly to nursery school between 5:30 and 6 a.m. Katherine would arrive at the marital house during this time to prepare the other daughter for school.

In June of 1978, the two children finished the school term and then went to Utah to visit with their maternal grandmother. Katherine joined them during the last three weeks of August. The children then returned to Cook County and on Labor Day they were returned to their father's residence to begin the new school term.

Around the third or fourth day of October, the children visited Katherine. She informed James that she would retain the children. She kept them for the next three months. James apparently did not ask for their return. During this time he was to be remodeling the marital house which was due to be sold pursuant to the dissolution of marriage judgment.

On January 19, 1979, James took the children for a weekly visitation. Two days later he telephoned Katherine to inform her that he would not return them. She protested and retook Holly for a short time before returning the child to James' residence. Apparently the child was upset at her parents' behavior and Katherine, recognizing Holly's need to be with her sister, relinquished custody of the child. The children were re-enrolled in their old schools.

Holly visited Katherine during the weekend of March 9. During the course of her stay she became ill. Katherine testified that she decided to retain custody of Holly because she was concerned for the child's health. She informed James of her decision on March 12.

Eight days later, James filed a petition to enroll and modify the dissolution judgment's custody provisions.[1] The petition requested both a temporary order restraining Katherine from interfering with James' right of immediate physical custody of Holly and an order awarding temporary custody of Holly to James, "pending a further hearing on the matter of permanent physical custody." After an *ex parte* hearing, on March 20, the court ordered Katherine to return Holly to James "without prejudice to the rights of either party to a further hearing on temporary custody * * *."

A hearing was held on April 3. During that hearing Katherine filed a motion to vacate the March 20 order. Her motion attacked the sufficiency of James' petition as well as the court's jurisdiction. After the court heard testimony it continued the matter for a "hearing on temporary custody."

---

[1] The parties and children had moved to and were residing in Cook County.

Testimony was thereafter heard on four occasions. On August 17, the trial court vacated the March 20 order; denied James' petition for temporary custody; found that neither a change in circumstances nor an integration of Holly into James' family had occurred; and ordered that a hearing on permanent custody be continued until a later date. The court ordered James to return Holly to Katherine.

This court stayed the trial court's custody order pending the outcome of this appeal. James has subsequently married. The children remain together.

## I.
### A.

James contends the trial court used an improper standard to evaluate his petition for custody of Holly. The court applied the criteria contained in section 610 of the Act (see pages 5 and 6 of this opinion). James claims the hearings concerned his request for temporary custody of Holly. He argues the court should have evaluated the evidence only in the light of Holly's "best interest" under section 602 because that standard applies to temporary custody proceedings. (Ill. Rev. Stat. 1977, ch. 40, par. 603(a).) Section 610, applicable to proceedings for modification of custody judgments, requires not only an evaluation of the child's "best interest," but also a demonstrable change in circumstances of the child or custodian and the occurrence of one out of three conditions precedent. (See Ill. Rev. Stat. 1977, ch. 40, par. 610(b)(1),(2),(3).) Thus, James concludes the trial court erroneously applied a more rigorous standard than was required.

Katherine responds to this contention by claiming the proceedings were held to determine whether the March 20 order should be vacated.[2] She argues the injunctive relief granted under that order required a finding that James would probably prevail on the merits (see, *e.g.*, *Keystone Chevrolet Co. v. Kirk* (1978), 69 Ill. 2d 483, 486, 372 N.E.2d 651) of his prayer for permanent custody under section 610. She concludes her motion to vacate that order raised the same issues. Therefore, the court correctly required satisfaction of the criteria under section 610.

We agree with Katherine's contention. We first note the March 20 order was originally granted because James, by verified allegation,[3] claimed Holly was then exposed to Katherine's "live-in boyfriend," John

---

[2] The record is not clear as to the purpose of the hearings below. What began as a hearing purportedly on temporary custody became a proceeding spanning more than five months, during which counsel referred to the proceedings as a hearing on "a motion to vacate"; "temporary custody"; "change of custody"; "permanent physical custody"; and "modification."

[3] The affidavit requirement of sections 603 and 610(a) of the Act was apparently excused by the court pending a further hearing on custody. See, *e.g.*, *In re Marriage of Herron* (1979), 74 Ill. App. 3d 748, 754, 393 N.E.2d 1153.

Hall. The existence of such an environment would be sufficient grounds to justify a change in custody under section 610. (See generally *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 349, 400 N.E.2d 421.) Prior to the August 17 vacatur order, however, Katherine married Hall. Thus, the original grounds for the March 20 order did not exist at the completion of the instant hearings.

■■ Furthermore, Katherine's motion to vacate was properly pending throughout the hearing. She attacked the jurisdiction of the court over her person and James' failure to give her notice of the March 20 hearing.[4] In addition, she challenged the sufficiency of the allegations in James' petition to enroll and modify. Proceedings to modify a prior custody judgment require satisfaction of the standards contained in section 610. James' petition requested preliminary injunctive relief and therefore was to be evaluated in terms of the probability of success on its merits. (*Keystone Chevrolet Co. v. Kirk.*) Our examination of the record, however, compels us to conclude that under either standard the trial court's finding is against the manifest weight of the evidence. We therefore find it unnecessary to discuss James' other arguments in support of a mere "best interest" determination.

## B.

■■ Section 610 of the Act is designed to maximize finality and ensure continuity for the child without jeopardizing his best interest. (*In re Custody of Harne* (1979), 77 Ill. 2d 414, 420-21, 396 N.E.2d 499; *In re Custody of LaMarca* (1979), 78 Ill. App. 3d 26, 31, 397 N.E.2d 31.) To this end, a prior custody judgment should not be modified unless a court first finds "upon the basis of facts that have arisen since the prior judgment * * * that a change has occurred in the circumstances of the child * * * and that the modification is necessary to serve the best interest of the child." (Ill. Rev. Stat. 1977, ch. 40, par. 610(b).) A court may then order a modification only if it finds:

"(1) the custodian agrees to the modification;

(2) the child has been integrated into the family of the petitioner with consent of the custodian; or

(3) the child's present environment endangers seriously his physical,

---

[4] Katherine submitted to the jurisdiction of the court when she made a general appearance at the April 3, 1979, hearing. (See *Park Avenue Lumber & Supply Co. v. Hofverberg* (1966), 76 Ill. App. 2d 334, 343, 222 N.E.2d 49, *appeal denied* (1967), 35 Ill. 2d 631.) The March 20 order was in the nature of a temporary restraining order. It was *ex parte*, attempted to restore the status quo, and was issued to remedy a perceived emergency pending a full hearing with notice. Under the circumstances as contained in the record, James' failure to notice Katherine of the petition did not render the March 20 order erroneous. During the subsequent hearings it appears the parties stipulated that James would maintain custody of Holly pending the court's ruling. Thus, lack of notice did not prejudice Katherine.

mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him." Ill. Rev. Stat. 1977, ch. 40, par. 610(b)(1-3).

The trial court found no change in circumstances since the original judgment. That finding is against the manifest weight of the evidence. The record indicates that two significant facts arose after the dissolution judgment. First, the prior judgment ordered the two children, Holly and Tamera, to be separated. Although Holly has resided in at least three households since that judgment, she has never been separated at length from her sister. Thus, the original judgment of April 17, 1978, has yet to be put into effect. Second, although the original judgment ordered Katherine to take custody of Holly, Katherine failed to personally exercise that custody until the end of August 1978. Furthermore, on several occasions she relinquished physical custody of Holly to James in consideration of Holly's uncontroverted emotional dependence upon her sister.[5]

Holly is almost five years of age. Expert psychological testimony adduced during the instant hearings was consistent on at least one point. Holly is emotionally dependent upon her older sister. There is no question that Tamera is an integrated member of James' family. We believe it a compelling inference that Holly's dependency is illustrative of her integration into James' family as well. It is clear that Katherine recognized and permitted the dependency to evolve, and therefore she has at the very least constructively consented to Holly's integration into that family. See, *e.g., In re Custody of Burnett* (1979), 75 Ill. App. 3d 998, 1001, 394 N.E.2d 58 (father's extended absence from child's custodial home during which father lived independently was sufficient to satisfy the consent requirement of section 610(b)(2)).

In addition, we believe that when a child as young as Holly spends in excess of a year within a natural parent's home, integration as a matter of law can be inferred. The manifest weight of the evidence here compels no other conclusion. Accordingly, we reverse and remand this cause for a determination on permanent custody in accordance with the views expressed herein. This cause has now been litigated for more than a year. The rights of the child have been abused while the precept of judicial economy has been ignored. Based on the present record further extensive hearings do not appear necessary. The shadow of uncertainty should be expeditiously removed from the question of Holly's permanent home.

Judgment reversed and remanded with directions.

PERLIN, P. J., and STAMOS, J., concur.

---

[5] We have also taken into consideration Holly's actual residence since James filed his motion to enroll and modify. See, *e.g., In re Custody of Burnett* (1979), 75 Ill. App. 3d 998, 1001, 394 N.E.2d 58.