*In re* CUSTODY OF JOHNATHON STEARNS.—(DAVID E. STEARNS, Petitioner-Appellant, *v.* JOYCE M. STEARNS, Respondent-Appellee.)

Third District No. 79-824

Opinion filed May 21, 1980.

William E. Stewart, of Kewanee, for appellant.

Peter H. Lousberg, of Klockau, McCarthy, Lousberg, Ellison & Rinden, of Rock Island, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

On September 27, 1976, David and Joyce Stearns were divorced. The divorce decree incorporated an agreement of the parties as to, *inter alia*, the custody of the couple's three minor children. Mrs. Stearns received custody of the children. David Stearns was granted visitation for three weekends each month and for a period of up to one month during the summer school vacation of the children, "if the children are willing." The later provision was made, in part, because David Stearns, a physician, had moved from the site of the marital home, Kewanee, to Peoria, in order to retrain as a surgeon.

On August 9, 1979, Dr. Stearns petitioned the court for modification of the divorce decree. He sought permanent custody of his son, Johnathon, who was then residing in his home in Peoria. This petition was denied, although the original divorce decree was modified so as to give Dr. Stearns visitation with his son for the boy's entire summer vacation. Dr. Stearns appeals from this judgment.

The Stearns were divorced under our former Divorce Act. However, the petition for modification is governed by our current Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1977, ch. 40, par. 801(c).) Dr. Stearns argues that custody of Johnathon should be changed from Mrs. Stearns to himself because "the child has been integrated into the family of the petitioner with consent of the custodian" (Ill. Rev. Stat. 1977, ch. 40, par. 610(b)(2)), and that the child's best interest would be served by a change of custody.

In September of 1976, the court found Joyce Stearns to be a fit custodian for her children. All evidence indicates that this is still the case. The record shows that Dr. Stearns is also a fit person to have the care of his son. The record indicates that Johnathon has the affection of both his father and his father's present wife.

Mrs. Stearns has consistently allowed her husband more visitation with their children than had been mandated by the court order. All three children have spent their entire summer vacations with Dr. Stearns since the divorce. The children are Sheri, age 13 at the time of the petition for modification, Johnathon, then age 12, and Wendi, then age 10. All three children were brought to the home of Dr. Stearns by their mother at the beginning of the summer of 1977, and remained with their father in Peoria for the entire summer. In the fall, the two girls returned to their mother in Kewanee, but Johnathon requested that he be allowed to stay in Peoria. He desired to play tackle football. He was in sixth grade at the time. Peoria had a tackle football program for boys his age, but Kewanee did not. Mrs. Stearns granted his request, and he was enrolled in the Peoria school system. At the end of the football season, he returned to his mother. He was re-enrolled in the Kewanee school system. However, his principal criticized Mrs. Stearns for changing the boy's school in mid-year.

In May of 1978, all three children were again taken to Peoria, in order to spend the summer with their father. All were active in summer sports programs in Peoria. During that summer, Mrs. Stearns moved from Kewanee to Rock Island to pursue her education. During the previous summer, she had received a master's degree in counseling. When the time came for the children to return to her, she was unemployed, but had submitted an application for employment as a counseler at Coe College in Cedar Rapids, Iowa. She received that job and moved to Cedar Rapids in September of 1978. In August of 1978, the two girls returned to their

mother, but Johnathon asked to be allowed to stay in Peoria, so that he might again play tackle football. Mrs. Stearns was concerned about the criticism she had received from Johnathon's principal in Kewanee, and told the boy that, because he should not be changing schools in mid-year, he could remain in Peoria, but would have to finish the school year there. Mrs. Stearns visited her son three or four times during the school year, and conversed with him on the telephone. The girls were again brought to their father's home in May of 1979. At the end of the summer, Mrs. Stearns came to Peoria to get her children. She succeeded in picking up the girls, but, according to Mrs. Stearns, Dr. Stearns picked up Johnathon bodily and carried him back into the house. Shortly thereafter, he filed the petition for modification of custody.

■■ Dr. Stearns contends, on appeal, that custody of Johnathon should be changed because Mrs. Stearns has, without his knowledge or permission, moved to Iowa, thus interfering with his rights to visitation. Dr. Stearns has made no attempt to invoke the power of the court to prevent Mrs. Stearns from removing the children to another State. Mrs. Stearns did not violate the divorce decree by moving, along with the children, to a different State. She had good reasons for her move, and did not effect this move for the purpose of oppressing Dr. Stearns. We note that Cedar Rapids is 180 miles from Peoria, and Mrs. Stearns has been cooperative in taking the girls to the Quad Cities, about halfway between the respective homes of the parties, where they could be picked up by their father for weekend visits. The trial court properly considered Mrs. Stearns' move to Iowa only as it affects the best interests of Johnathon. *Gray v. Gray* (1978), 57 Ill. App. 3d 1, 5, 372 N.E.2d 909.

The law of our State favors finality in child custody arrangements, and manifests an "aversion to custody changes." *In re Custody of Harne* (1979), 77 Ill. 2d 414, 420-21, 396 N.E.2d 499; Ill. Rev. Stat. 1977, ch. 40, par. 610.

Our legislature has mandated that:

"The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:

(1) the custodian agrees to the modification;

(2) the child has been integrated into the family of the petitioner with consent of the custodian; or

(3) the child's present environment endangers seriously his

physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him." (Ill. Rev. Stat. 1977, ch. 40, par. 610(b).)

Dr. Stearns argues that, because Johnathon has lived with him continuously from June of 1978 until the filing of the petition in August of 1979 and, prior to that, from June to November of 1977, with the permission of Mrs. Stearns, "the child has been integrated into the family of the petitioner with consent of the custodian."

While we agree that Johnathon was placed in the physical custody of his father for the period in question, with the consent of his mother, we do not conclude that the evidence supports a finding that Mrs. Stearns consented to the child's integration into the family of Dr. Stearns. "[T]he consent requirement in section 610(b)(2) is intended to ensure that the custodian acquiesced in the transfer of physical custody (*e.g.*, to discourage noncustodial kidnapping) and the integration into the family of the petitioner, and should be viewed in that narrow context." *(In re Custody of Burnett* (1979), 75 Ill. App. 3d 998, 1000, 394 N.E.2d 58.) Mrs. Stearns testified that she consistently allowed all of her children to spend the entire summer with their father. She allowed Johnathon to remain in Peoria from August to November of 1977, at the boy's request, so that he could play tackle football. At the end of football season, he returned to her home in Kewanee. She again allowed Johnathon the chance to play organized football in Peoria in 1978, but because his principal had advised her that it would be in the boy's best interest for him to remain at the same school for the entire academic year, she insisted that Johnathon finish the school year in Peoria, if he chose to begin the school year there. Consistent with the court order and her previous generosity regarding visitation with the children's father, Mrs. Stearns allowed all of her children a full summer of visitation with their father. By the end of the summer of 1979, Mrs. Stearns had moved to Cedar Rapids. There she purchased a house in which Johnathon was to have his own room. Tackle football was available to Johnathon in Cedar Rapids, so the issue of his staying in Peoria to play football did not arise.

■ When Mrs. Stearns came for her children at the end of the summer, she succeeded in picking up the girls, but Johnathon was physically restrained by his father. Johnathon told the judge, *in camera,* that he wanted to return to his mother. Dr. Stearns asserted at trial that he did not understand Johnathon's stay with him to be temporary. The trial court is vested with judgment of the credibility of witnesses. Mrs. Stearns' story was, in all ways, consistent with her assertion that she did not consent to the boy's integration into the father's family. Her generosity toward her children and former husband should not now be interpreted as a relinquishment of her custodial rights.

For the reasons stated, therefore, the judgment of the Circuit Court of Henry County is affirmed.

Affirmed.

SCOTT and STOUDER, JJ., concur.