*In re* MARRIAGE OF LINDA A. PEASE, Petitioner-Appellee, and
JACK E. PEASE, Respondent-Appellant.

Second District    Nos. 81-483, 81-649 cons.

Opinion filed May 20, 1982.

VAN DEUSEN, J., specially concurring.

H. Joseph Gitlin, of Gitlin and McNerney, of Woodstock, for appellant.

Gordon E. Graham, of Holmstrom and Green, of Crystal Lake, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Respondent, Jack Pease, appeals from an order of the circuit court of McHenry County denying his petition for a change of custody, and from an order awarding petitioner, Linda Pease, prospective attorney fees for the defense of an appeal. Three issues are before us on this appeal. (1) Whether the circuit court abused its discretion in finding that the children were not integrated into respondent's family; (2) whether the circuit court abused its discretion in finding that the children's present environment does not seriously endanger their physical, mental, moral or emotional welfare; and (3) whether the circuit court abused its discretion in awarding petitioner prospective attorney fees for the defense of the appeal. We affirm in part, reverse in part.

■■ Petitioner contends that the trial court abused its discretion in denying his petition for a change of custody. Child custody matters are within the sound discretion of the trial court. The trial court is in a better position to observe the witnesses and to determine what is in the best interest of the children. The trial court disposition in such matters will not be interfered with unless it is against the manifest weight of the evidence. (*In re Custody of Harne* (1979), 77 Ill. 2d 414, 422, 396 N.E.2d 499, 503; *In re Marriage of Batchelor* (1980), 89 Ill. App. 3d 781, 412 N.E.2d 49.) The trial court is guided by section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (Ill. Rev. Stat. 1979, ch. 40, par. 610(b)), which provides:

> "The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these

standards the court shall retain the custodian appointed pursuant to the prior judgment unless: (1) the custodian agrees to the modification; (2) the child has been integrated into the family of the petitioner with consent of the custodian; or (3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him."

Our supreme court has determined that section 610(b) requires a trial court, before modifying a prior custody judgment, to make an explicit finding that either subsection (1), (2), or (3) of section 610(b) is applicable. (*In re Custody of Harne.*) Respondent argues that he has proved that subsections (2) and (3) of section 610(b) are applicable, and that the trial court's finding is against the manifest weight of the evidence.

Respondent's contention that his children have been integrated into his family with petitioner's consent is without merit. Respondent argues that the term "integrated" as used in section 610(b)(2) is synonymous with "adjusted" within the meaning contemplated by the legislature. He argues that petitioner consented to his liberal visitations and therefore consented to the integration or "adjustment" of the children into respondent's family. "The consent requirement in section 610(b)(2) is intended to ensure that the custodian acquiesced in the transfer of physical custody (*e.g.,* to discourage non-custodial kidnapping) and the integration into the family of the petitioner, and should be viewed in that narrow context." *In re Custody of Burnett* (1979), 75 Ill. App. 3d 998, 394 N.E.2d 58.

■■ In the case at bar, the record does not establish that respondent's children have begun to develop a stable and permanent custodial and environmental relationship with respondent's family. Respondent usually has physical custody of the children from Friday afternoon until early Monday morning. The children are with their father for only one-third of the week. This limited period of time does not allow for the children to become integrated into the father's family. Respondent's wife cooks for the two extra children only two days of the week, and she does not have to wash their clothes or attend to their medical needs. Indeed, a major part of the children's lives has not been integrated into respondent's family.

Accordingly, the record establishes that petitioner merely allowed respondent to exercise his visitation rights, and at most, to have temporary custody of the children each weekend.

■■ Additionally, section 610(b)(2) requires that the custodial parent consent to the children's integration into the noncustodial parent's family. (*In re Custody of Burnett.*) Petitioner never consented either explicitly or "constructively" to respondent's attempt to integrate the children into his

family. (*In re Custody of Iverson* (1980), 83 Ill. App. 3d 493, 404 N.E.2d 411.) Rather, petitioner's acquisition of an injunction enjoining respondent from interfering with the children's custody, demonstrates the opposite. Petitioner's generosity in allowing respondent to exercise more than minimal visitation rights is not consenting to the integration of her children into respondent's family. (*In re Custody of Stearns* (1980), 84 Ill. App. 3d 195, 198, 405 N.E.2d 457, 459.) The case at bar is not distinguishable from *Stearns*. In *Stearns*, the mother allowed her son to remain with his father because the town in which his father lived had a tackle football team, while the boy's mother's town did not. However, the court noted that the mother was generous with regard to visitation even prior to when the circumstances involving the tackle football team arose. As in *Stearns*, petitioner's generosity toward respondent and the children should not be interpreted as a relinquishment of her custodial rights. Thus, respondent did not consent to her children's integration into respondent's household.

The second issue before us is to determine whether the trial court abused its discretion in finding that the children's present environment does not seriously endanger their physical, mental, moral or emotional welfare.

Defendant contends that the children's present environment seriously endangers their physical, mental, moral and emotional welfare, and that the harm likely to be caused by a change of environment would be outweighed by the advantages to them. The evidence regarding petitioner's care for her children's physical health, hygiene and safety was conflicting. Respondent testified that petitioner fed the children insubstantial meals, failed to bathe them and to wash their clothes. Petitioner refuted each of these accusations. The record indicates however, that prior to the hearings in the trial court, petitioner could not spend substantial periods of time with her children because she had to work. The children were spending considerable time with babysitters.

The record further establishes that petitioner and the children have resided in four separate locations, and that petitioner had employed 17 different babysitters and worked at five different jobs since the parties' marriage was dissolved. The stability of the environment is an important factor in determining a child's best interests. (*In re Custody of Russell* (1979), 80 Ill. App. 3d 41, 399 N.E.2d 212.) While changes in the parents' residence, employment and choice of babysitters are relevant factors in determining the child's best interest, they are not controlling unless they adversely affect the child's welfare. *Mason v. Mason* (1977), 49 Ill. App. 3d 775, 364 N.E.2d 705.

In the case at bar, the record is devoid of any evidence that petitioner's changes in residence, babysitters or employment adversely affected the children's welfare. Although the ill effects of such changes

need not manifest themselves before a court can alter a child's custody (*In re Custody of Harne*; *In re Custody of Nodot* (1980), 81 Ill. App. 3d 883, 892, 401 N.E.2d 1189, 1194), nothing in the record suggests that the children's present welfare is seriously endangered, and there is a lack of evidence that the children's welfare will be endangered in the future. See *Soldner v. Soldner* (1979), 69 Ill. App. 3d 97, 103-04, 386 N.E.2d 1153, 1158.

In the case at bar, petitioner testified that she had begun to work the midnight to seven a.m. shift. This allowed petitioner to spend considerably more time with the children, and to leave the children with a baby-sitter only while they were sleeping. Although petitioner's living arrangements with her roommates lacks any clear promise of long-time security, the children appear to have a healthy relationship with the petitioner's roommates' children and a stable environment. Thus, any deficiency in petitioner's ability to provide her children with a stable environment, appears to have been corrected. See *In re Custody of Saloga* (1981), 96 Ill. App. 3d 661, 666, 421 N.E.2d 991, 994.

There is evidence that the parties' son has a stuttering problem. There is no evidence linking Jonathan's stuttering to any instability in his present environment with his mother; rather, all the evidence indicates his being shuffled to and from his parents' separate residences and this dispute as being the cause of the boy's impediment.

Section 610 of the Marriage Act was enacted to provide a degree of finality to child custody cases. (*In re Custody of Harne*.) The rationale for this provision was to provide stability and permanency in children's custodial and environmental relationships. The law favors the preservation of the existing custody judgment. (*Rayburn v. Rayburn* (1977), 45 Ill. App. 3d 712; 360 N.E.2d 142.) Additionally, reviewing courts are reluctant to interfere with the disposition of the trial court in child custody matters. (*Wells v. Wells* (1976), 36 Ill. App. 3d 488, 344 N.E.2d 37.) The record shows that the trial court considered the evidence before it, and the trial court was charged with assessing the credibility of the witnesses. Therefore, the trial court's disposition was not contrary to the manifest weight of the evidence. The judgment of the circuit court of McHenry County denying respondent's petition to modify the custody decree is affirmed.

■■ ■ Finally, respondent appeals from an order of the trial court requiring him to pay petitioner's prospective attorney fees for defending the appeal. We hold that the trial court lacks jurisdiction to enter an award for attorney fees to defend an appeal after the notice of appeal is filed and while the appeal is pending. Additionally, we hold that a court may not award prospective attorney fees for the defense of an appeal.

In appealing the award of attorney fees, respondent maintains that the trial court has no jurisdiction to make the award, since the jurisdiction

of the appellate court has already attached. An exception to this general jurisdictional rule must be specifically provided for by statute. Section 508(a) of the Marriage and Dissolution of Marriage Act provides:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse, which award shall be made in connection with the following * * * (3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders." Ill. Rev. Stat. 1979, ch. 40, par. 508(a).

Although the statute does allow for an award of attorney fees made in connection with the defense of an appeal, the statute has no specific provision to negate the general rule that the filing of a notice of appeal deprives the trial court of further jurisdiction. *Powers v. National Mirror Works* (1977), 52 Ill. App. 3d 592, 367 N.E.2d 763; *Sherman v. Sherman* (1979), 74 Ill. App. 3d 451, 393 N.E.2d 67; *Hecht v. Hecht* (1977), 49 Ill. App. 3d 334, 364 N.E.2d 330; *Kilbane v. Dyas* (1975), 33 Ill. App. 3d 439, 337 N.E.2d 217; *First Federal Savings & Loan Association v. American National Bank & Trust Co.* (1968), 100 Ill. App. 2d 460, 241 N.E.2d 615.

The applicable principles are summarized in the Historical and Practice Notes to section 508:

"This subsection does not authorize awards of attorney's fees and costs in the trial court while an appeal is pending. Such awards could be made under the prior Divorce Act which expressly authorized such a procedure. * * * In the absence of such explicit statutory authority, the trial court lacks jurisdiction to award fees to defend an appeal after the jurisdiction of the appellate court has attached." Ill. Ann. Stat., ch. 40, par. 508, Historical and Practice Notes, at 639 (Smith-Hurd 1980).

It is clear that the trial court has general power to award attorney fees pursuant to section 508(a) of the Marriage and Dissolution of Marriage Act and also pursuant to the plenary equitable powers of the trial court. (See *Zalduendo v. Zalduendo* (1977), 45 Ill. App. 3d 849, 859, 360 N.E.2d 386.) However, regardless of the source, the power must be exercised while the trial court retains general jurisdiction over the cause. See *Zalduendo v. Zalduendo* (1977), 45 Ill. App. 3d 849, 859; see also *Fox v. Fox* (1978), 56 Ill. App. 3d 446, 449, 371 N.E.2d 1254; see generally Dienstag, *Attorney Fees for Services Rendered in the Prosecution or Defense of Appeals from Post-Decree Divorce Proceedings*, 66 Ill. B.J. 568, 572-74 (1978).

The cases have held repeatedly that the only power to allow attorney

fees to defend an appeal involving a matrimonial situation is by virtue of section 15 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 16). *Arndt v. Arndt* (1948), 399 Ill. 490, 78 N.E.2d 272; *Jenkins v. Jenkins* (1878), 91 Ill. 167; *Jacobs v. Jacobs* (1946), 328 Ill. App. 133, 65 N.E.2d 588; *Balswic v. Balswic* (1912), 179 Ill. App. 118.

The legislature amended the Divorce Act in 1976 (1976 Ill. Laws 788) by deleting the provision authorizing the trial court award of attorney fees "during the pendency of the appeal." (Ill. Rev. Stat. 1975, ch. 40, par. 16.) We find no language in section 508(a) of comparable specificity that would allow the trial court to make such an award after appellate jurisdiction has attached.

Section 508(a) states that the court has authority "from time to time" to make fee awards, but this phrase does not seem to be jurisdictional in scope. Since section 508(a) encompasses attorney fees for prefiling and post-decree activities, we conclude that this language only refers to the recurring need for such orders. *Cf. County Board v. Short* (1898), 77 Ill. App. 448, 452 ("from time to time" does not mean "at any time" or "at all times" and must be read in context).

We are aware that *In re Marriage of Giammerino* (1981), 94 Ill. App. 3d 1058, 419 N.E.2d 598, approved of granting prospective attorney fees. We note that this view is in conflict with the statute which authorizes payment of "a reasonable amount for his own * * * attorney's fees * * * and [requires that such] fees [be] necessarily *incurred* * * *." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 40, par. 508(a).) Thus, the statute and the relevant case law clearly refers to accumulated expenses and not future expenses. (*In re Marriage of Justema* (1981), 95 Ill. App. 3d 483, 420 N.E.2d 796.) The court is not bound by the attorney's opinion as to what constitutes a reasonable fee and must inquire into all of the necessary factors. (*Welsh v. Welsh* (1976), 38 Ill. App. 3d 35, 39, 347 N.E.2d 512, 516.) The time spent on a case is the factor of greatest importance. (*In re Marriage of Reczek* (1981), 95 Ill. App. 3d 220, 222, 420 N.E.2d 161, 163.) An attorney's general statement as to the time spent is an insufficient basis for a fee award and detailed time records are usually required. (*In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 277, 411 N.E.2d 947, 950.) The attorney must itemize both the time expended and the work performed. (*In re Marriage of Raidbard* (1980), 87 Ill. App. 3d 158, 163, 408 N.E.2d 1021, 1026.) The court also looks to the benefits resulting to the client. *In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 276, 411 N.E.2d 947, 949: *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 458-59, 387 N.E.2d 1254, 1260-61, *appeal denied* (1979), 75 Ill. 2d 589.

Therefore, we conclude that the statute and the case law rejects the idea of prospective fees. The underlying premise for this viewpoint is that "prospective awards of attorney's fees made during the pendency of an

appeal were, in practice, necessarily speculative and therefore difficult to determine or to review on appeal." (Ill. Ann. Stat., ch. 40, par. 508, Historical and Practice Notes, at 640 (Smith-Hurd 1980).) An appropriate remedy is for the petitioner to petition the trial court for an allowance of attorney fees and costs now that those expenses can accurately be made.

Accordingly, the order of the circuit court of McHenry County denying respondent's petition to modify the custody decree is affirmed. The award of prospective attorney fees to petitioner's attorney is reversed.

Affirmed in part, reversed in part.

HOPF, J., concurs.

JUSTICE VAN DEUSEN, specially concurring:

I concur in the result reached in this case. However, while I agree with the majority's holding that the trial court erred in ordering the respondent to pay petitioner's prospective attorney fees for defending the appeal, I disagree that the trial court lacks jurisdiction to entertain a petition for attorney fees to defend an appeal after notice of appeal is filed and while the appeal is pending.

This court recently considered and rejected the position that the trial court lacks jurisdiction to award attorney fees subsequent to the filing of notice of appeal, reasoning as follows:

"[T]o hold that the trial court is deprived of jurisdiction to award attorney's fees under the Act because a notice of appeal has been filed would be to apply a general principle to a specific situation where it is inapposite. The filing of notice of appeal does not deprive the trial court of jurisdiction in all instances. There are many recognized exceptions to the general principle that the trial court loses jurisdiction upon the filing of a notice of appeal. [Citations.] Plainly, a trial court has jurisdiction to hear matters independent of and distinct from the issues involved in the appeal. The trial court may entertain matters that are purely collateral or supplemental to the appeal [citations], or which arise subsequent to entry of the judgment from which the appeal has been taken and which do not have the effect of interfering with review of the judgment. [Citations.] Accordingly, we must determine whether an award of attorney's fees to defend an appeal of a matter brought under the Act would have the effect of interfering with review of the judgment from which the appeal has been taken.

In this regard, it is readily apparent that an award of attorney's fees to defend a pending appeal necessarily involves an issue that

arises after a notice of appeal is filed, and which therefore could not be embraced in the pending appeal. Thus, the award of attorney's fees to defend a pending appeal is not affected in any way by the appeal, and it is not dependent in any respect on the outcome of the appeal. Nor does the award of attorney's fees have the effect of interfering with the pending appeal. Accordingly, an award for attorney's fees to defend a pending appeal is merely collateral to the appeal and involves a matter independent of any question raised by the appeal. [Citations.] We therefore conclude that under the Act, the trial court has jurisdiction to award attorney's fees for the defense of pending appeals. (*In re Marriage of Giammerino* (1981), 94 Ill. App. 3d 1058, 1060-61.)

The *Giammerino* court resolved this question in a well-reasoned and cogent manner. Clearly, the trial court is not foreclosed, by reason of the filing of a notice of appeal, from awarding attorney fees to defend the appeal because the fee award is collateral to and independent of the appeal.

I agree with the majority's opinion that there must be specific statutory authority to allow the trial court to award attorney fees after appellate jurisdiction has attached. The Historical and Practice Notes to section 508 correctly state that explicit statutory authority is required. (Ill. Ann. Stat., ch. 40, par. 508, Historical and Practice Notes, at 639 (Smith-Hurd 1980).) However, while the majority agrees with the authors of the note that section 508(a) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 508(a)) does not authorize the trial court to award attorney fees during the pendency of an appeal, I do find such specific and explicit statutory authority in section 508(a). Compare *Sherman v. Sherman* (1979), 74 Ill. App. 3d 451, 455; *Zalduendo v. Zalduendo* (1977), 45 Ill. App. 3d 849, 859.

From the plain meaning of the words of section 508(a)(3), it is apparent that the trial court is authorized to award, "from time to time," attorney fees that have been "necessarily incurred" in the defense of an appeal. In *In re Marriage of Justema* (1981), 95 Ill. App. 3d 483, 488, this court recently held that the legislature by section 508 authorized courts to, from time to time, order payment of attorney fees and costs incurred by a party for services of an attorney which have been rendered. While *Justema* dealt with the authority of the trial court to award fees for proceedings at the trial level, the legislative grant of authority in the words "at any time" applies equally to trial court fee awards for services rendered in pending appeals. Because the words "from time to time" are clearly applicable, the words "during the pendency of the appeal," which had appeared in section 15 of the former Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 16), were surplusage and were discarded.

With the enactment of section 508(a), it is clearly permissible for a party to make multiple requests for fees or costs at different stages of the proceedings. (Ill. Ann. Stat., ch. 40, par. 508, Historical and Practice Notes, at 635 (Smith-Hurd 1980).) Nothing in the Act states that attorney fees may not be awarded during the pendency of an appeal. (*In re Marriage of Giammerino* (1981), 94 Ill. App. 3d 1058, 1060.) The language of this section is clear and unambiguous, and there is no need to engraft upon it, as the majority would, a requirement that the attorney wait until the termination of the appeal before petitioning the trial court for fees under the Act. See *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139-40.