*In re* MARRIAGE OF WILLIAM KARTHOLL, Petitioner-Appellant, and NANCY KARTHOLL, n/k/a Nancy Jandris, Respondent-Appellee.

Second District   No. 84—1209

Opinion filed May 6, 1986.

Howard W. Broecker, of Geneva, and Jerry S. Goldberg and Evan James Mammas, both of Mammas & Goldberg, of Chicago, for appellant.

Lyle B. Haskin, George J. Sotos, and Joan Brady, all of Haskin, Mindel, Faermark & Sotos, of Wheaton, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

William Kartholl (father) appeals from an order of the circuit court of Du Page County terminating the parties' joint custody of their minor child, William Kartholl, Jr. (son), and awarding sole custody to Nancy Kartholl, n/k/a Nancy Jandris (mother). We affirm the denial of the father's petition for a change of custody, but reverse the trial court's order terminating joint custody and awarding sole custody to the mother.

The parties are familiar with the facts and thus we recite them only as is necessary to resolve the issues presented. The father essentially makes two interrelated arguments: (1) the trial court abused its discretion in denying his petition seeking sole or, alternatively, physical custody of the son; and (2) the trial court was without authority to award sole custody to the mother. In response, the mother argues in part that the judgment of dissolution filed on December 17, 1979, did not actually provide for joint custody, and therefore, that the trial court's order awarding sole custody to the mother merely maintained the status quo.

Examination of the dissolution judgment establishes that the order provided for joint custody. The judgment embodied an agreement between the parties. In paragraph 7, the court awarded the parties the joint custody of their minor child. While physical custody was to remain with the mother, the judgment provided that the father had custody of the son for significant amounts of time, including alternative weekends, holidays, and a one-month continuous period during the summer. While the judgment provided that the mother had the "primary responsibility for the day-to-day care of William Jr. and for the religious, moral, educational and medical decisions affecting William's welfare," the mother was directed to consult with the father and to consider his wishes regarding these decisions. Because the parties shared both physical and legal custody, and because the parties and the trial court referred in the dissolution judgment to the custody of the son as held jointly, we find unpersuasive the mother's assertion that the initial custody decision was actually an award of sole custody to her with extensive visitation rights awarded to the father.

Given the fact that the dissolution judgment provided for

joint custody, we must next determine whether the trial court's order denying the father's petition for modification of the joint-custody award is against the manifest weight of the evidence. Custody questions in Illinois are governed by statute. (Ill. Rev. Stat. 1983, ch. 40, par. 601 *et seq.*) The parties agreed in writing in their judgment for dissolution that the court would be bound by the statute in force at the time any request is made for modification of the joint-custody award. The father petitioned for custody of the son on March 23, 1984; after the joint custody provision of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) was added in 1982. Therefore, these amendments govern our analysis of the trial court's order in the case at bar.

Section 603.1(c) of the IMDMA provides that any order for joint custody may be modified or terminated upon the petition of one or both parents or on the court's own motion under the standards of section 610. (Ill. Rev. Stat. 1983, ch. 40, pars. 603.1(c), 610.) In his amended petition filed March 23, 1984, the father requested "modification" of the joint custody award. Actually, however, the father requested both termination and modification of the joint custody. In his prayer for relief, he asked the court to award him the sole care, custody, control and education of the son. In the alternative, the father sought modification of the judgment to provide that he be awarded the primary physical custody during the week and alternative weekends.

Where a party seeks to terminate joint custody, the requirements of section 610 govern the trial court's action. (Ill. Rev. Stat. 1983, ch. 40, par. 603.1(c).) Even where the request is only for a change in the physical custody of the child, the requirements of section 610 nevertheless apply. (*In re Marriage of Friedman* (1981), 100 Ill. App. 3d 794, 427 N.E.2d 261.) The trial court's decision regarding a request for modification of a prior custody judgment will not be disturbed unless against the manifest weight of the evidence or an abuse of discretion. (*In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 435 N.E.2d 1361; *In re Marriage of Friedman* (1981), 100 Ill. App. 3d 794, 427 N.E.2d 261.) To terminate or modify an original joint-custody award, a trial court pursuant to section 610(b) must find: (1) by clear and convincing evidence, (2) on the basis of facts that have arisen since the prior judgment or facts that were unknown to the court at the time of entry of the prior judgment, (3) that a change has occurred in the circumstances of the child or the parties having custody, and (4) modification is necessary to serve the best interest of the child. (Ill. Rev. Stat. 1983, ch. 40, par. 610(b).) Because the trial

court's conclusion that modification was unnecessary to serve the best interest of the son is not against the manifest weight of the evidence, we need not discuss the other requirements of section 610(b).

■ The father asserts the trial court's denial of his petition for sole custody or alternatively for primary physical custody of his child is against the manifest weight of the evidence because the trial court failed to recognize the burden placed upon the son as a consequence of the mother's lifestyle. Specifically, the father emphasizes the disruption of the son's life caused by the mother's relocations and her work schedule. The mother testified she lived with her parents in Medinah from the date of the dissolution judgment—December 17, 1979—until she remarried in June 1981. Upon her remarriage, she and the son moved to her new husband's residence in Barrington and lived there until September 1982. During that month, the family moved to Downers Grove and remained there until May 1983. After finding a home for sale in Downers Grove located five blocks from its initial residence there, the family moved to the new home in May 1983 and continued to live there at the time of the August 1984 custody hearing. The father did not establish how these changes in residences had an adverse effect on the child's adjustment to his home, school or community. The trial court could have found that the moves of the mother and the son were not so frequent so as to adversely affect the son's best interest. Compare *In re Custody of Russell* (1979), 80 Ill. App. 3d 41, 399 N.E.2d 212 (where mother and son moved five times in the four months preceding the hearing).

The father also asserts the trial court failed to consider adequately the disruptive effect of the mother's schedule on the son. The mother testified that her basic work hours as director of student activities for Downers Grove High School were 7:45 a.m. to 4 p.m. The son's babysitter, who had taken care of the son from 1979-84, lived 23 miles from Downers Grove. To make sure she could take the son to the babysitter and return to work on time, the mother awoke the son at 6:30 a.m. While the father asserts 6:30 a.m. is too early in the morning for the son to have to be awakened, the mother testified the son usually was awake when she would enter his room at 6:30 a.m.

At the completion of her work day, the mother would usually pick the son up at 4:30 p.m. However, the father stresses the exceptions to this schedule. The mother said she remained in her office later than 4 p.m. during the 1983-84 school year approximately six times per month; these times, however, were on days when the father had physical custody of the son and therefore she would stay later because she "wasn't in a hurry to get out of my office." About once a month, the mother would work later than 4 p.m. and would then pick the son up at

the babysitter's residence. She also testified that during the fall of 1983, when she was attending school working toward her master's degree, the son's maternal grandmother would pick up the son from the babysitter's residence and would return him to the grandmother's house, which is located approximately one block from the babysitter's residence. At times, the son would remain at his grandmother's residence overnight and the mother would pick up the son the next day. Twice each month, the mother would return to school after dinner without the son to attend an open house, or to make a presentation to the school board or community.

■■ The father argues that the son's best interest is not served by the mother's custody because of her schedule. Rather, he asserts the son would be better cared for in his home where his new wife, Mary Jo Kartholl (Mary Jo), who does not work outside the home, would be continuously available to attend to the son's needs. However, the trial court could have found significant the mother's testimony that her contract with the school board only extends for nine months of the year and, thus, that she would be free for three months of the year to attend to the son's needs. Also, the mother testified the son greatly enjoyed his time with the babysitter, and Mary Jo admitted that she and the father had used this same babysitter to take care of the son when the father had physical custody of the son.

■■ The court's award is also supported by the legislative presumption embodied in section 610 in favor of the present custodian of the child. (In re Marriage of Gargus (1981), 97 Ill. App. 3d 598, 423 N.E.2d 193.) The stability of the environment is an important factor in determining a child's best interest. (In re Marriage of Pease (1982), 106 Ill. App. 3d 617, 435 N.E.2d 1361.) The purpose of this presumption is to promote stability and continuity in the child's custodial and environmental relationships. (In re Marriage of Gargus (1981), 97 Ill. App. 3d 598, 423 N.E.2d 193.) While the parties shared custody, the judgment for dissolution gave the mother the primary physical custody of the son and thus, the trial court properly could have considered this factor in maintaining the primary physical custody of the son with the mother.

■■ In addition to the father's assertion that the mother's schedule is contrary to the son's best interest by causing him to endure excessive travel time in an automobile, both the father's testimony and that of Mary Jo stressed the quality of their time with the son. Both testified that they involved the son in many activities and spent significant amounts of time attending to the son's needs and development while he was in their custody. The record does establish that the father is a competent and loving parent and cares very much for the

son. Acknowledgment of these facts, however, does not require the conclusion that the trial court's decision to deny the father's petition to terminate or modify custody is against the manifest weight of the evidence. We therefore affirm that portion of the trial court's order which denied the father's petition.

■■ We must next determine whether the trial court was correct in terminating the parties' joint custody and in awarding sole custody to the mother. The father asserts the trial court was without authority to terminate joint custody and to award sole custody to the mother because the mother never sought such relief in her pleadings. Our review of the record confirms that the mother never formally petitioned the court for termination of joint custody, nor did she petition for sole custody of the son. As previously noted, section 603.1(c) states that any order for joint custody may be modified or terminated upon the petition of one or both parents or on the court's own motion. (Ill. Rev. Stat. 1983, ch. 40, par. 603.1(c).) The wording of this section does not expressly limit the court when considering a petition for modification or termination of custody to the allowance or denial of the relief sought by the petitioning party. In an analogous situation, the husband in *In re Marriage of Stanley* (1985), 133 Ill. App. 3d 963, 479 N.E.2d 1152, complained on appeal about the trial court's modification of his visitation privileges where no petition for modification of visitation was filed. The *Stanley* court discussed the general rule prior to the Uniform Marriage and Divorce Act (9A U.L.A. sec. 101 *et seq.* (1979)) that once the issue of custody was placed before the court, "the court may alter custody or visitation rights to the extent required by the children's best interest, even if no petition requesting the relief awarded is on file." (*In re Marriage of Stanley* (1985), 133 Ill. App. 3d 963, 971, 479 N.E.2d 1152, 1157.) Finding that the husband's petition for change of custody placed the issue of visitation before the court, the *Stanley* court found no error in the trial court's alteration of the husband's visitation privileges.

We need not decide whether the rule articulated in *Stanley* authorized the court here to award relief not petitioned for by the mother or even whether *Stanley* is decided correctly, because the evidence presented in the case at bar does not support the trial court's conclusion that termination of joint custody and allowance of sole custody to the mother was necessary for the best interest of the son. Even if the trial court properly could terminate joint custody and award sole custody to the mother on the basis of the father's petition alone, the trial court was still required by section 610 to find by clear and convincing evidence on the basis of facts arising since the original custody judg-

ment or unknown to the court at the time of the initial judgment, that a change had occurred in the circumstances of either the child or either or both of the parties and that modification was necessary to serve the best interest of the child. (Ill. Rev. Stat. 1983, ch. 40, par. 610.) Virtually no evidence was introduced which could even arguably be construed as supporting the termination of the father's joint custody in the best interest of the son. In fact, the only evidence cited by the mother in her appellate brief is the father's admission that he had in the past allowed his son to ride in his snowmobile without a helmet.

While the record also contains some testimony that the father's relationship with his mother had been strained because of circumstances attending his marriage to Mary Jo, no testimony was adduced that this dispute adversely affected the son while in the physical custody of the father so as to require an award of sole custody to the mother in the son's best interest. Because of the paucity of evidence supporting the conclusion that termination of joint custody was necessary for the son's best interest, we conclude the trial court's order terminating the parties' joint custody and awarding sole custody to the mother is against the manifest weight of the evidence.

The necessary result of our decision is that the provisions of the original joint-custody award remain in effect and any modification or termination of the original custody award must be sought based upon the standards contained in section 610. Alternatively, the parties could agree to terminate joint custody (Ill. Rev. Stat. 1983, ch. 40, par. 610(b)), in which case the court would terminate joint custody and would then be authorized to make any modification necessary to serve the best interest of the child.

The judgment of the circuit court of Du Page County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

SCHNAKE and STROUSE, JJ., concur.